UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ROSA ZAYAS, as Parent and Natural Guardian of R.Z.[1], and ROSA ZAYAS, Individually;

LIZETTE MARTINEZ, as Parent and Natural Guardian of H.G.M., and LIZETTE MARTINEZ, Individually;

BINTU KABBA, as Parent and Natural Guardian of O.F., and BINTU KABBA, Individually;

MAYLENE OTERO, as Parent and Natural Guardian of K.R-O., and MAYLENE OTERO, Individually,

Plaintiffs,

-against-

MELISSA AVILES-RAMOS, in her official capacity as Chancellor of the New York City Department of Education, and the NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendants.
-----------------------------------------------------------------X

**COMPLAINT**
25-cv-7561

**PLAINTIFFS**, as Parents and Natural Guardians of their respective children with disabilities ("Students" or "Plaintiff-Students"),[2] and Individually, as and for their Complaint, allege as follows:

## PRELIMINARY STATEMENT

1. The Individuals with Disabilities Education Act ("IDEA") offers federal funds to states in exchange for a commitment to furnish a "free appropriate public education" ("FAPE") to all children with physical or intellectual disabilities. *See* 20 U.S.C. § 1401(3)(A)(i) (listing covered disabilities).

[1] Although the full name of the Parent is used in the Complaint and Order to Show Cause herein, pursuant to the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232(g) (and 34 C.F.R. Part 99), Plaintiff is using the initials of the Student to protect the Student's privacy.
[2] As defined by 20 U.S.C. § 1401(3).

2. As defined in the IDEA, a FAPE comprises special education and related services—instruction tailored to meet a child's unique needs, and supportive services sufficient to allow the child to benefit from the instruction. 20 U.S.C. § 1401(26) and (29).
3. An eligible child acquires a substantive right to such an education once a State accepts the IDEA's financial assistance from the Federal Government.
4. Under the IDEA, an Individualized Education Program ("IEP") is the primary vehicle for providing a child with the promised FAPE.
5. An IEP is a unique educational program specially designed to meet the particular needs of a child with disabilities, which is created only after carefully considering the child's current levels of achievement, disability, and potential for growth. §§ 1414(d)(1)(A)(i)(I)-(IV), (d)(3)(A)(i)-(iv).
6. A school district's IEP must be specially designed to meet the unique needs of a child with disabilities.
7. To meet its substantive obligation under the IDEA, a school district must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances.
8. A school district fulfills its substantive obligations under the IDEA when it provides an IEP reasonably calculated to enable a child to make some educational progress and advancement from year to year—progress that is appropriate in light of the child's circumstances and is something more than mere trivial advancement.
9. Unless the school district and the Parent agree otherwise, federal and state law requires the child to remain in their then-current educational placement during the pendency of a due

process proceeding. *See* 20 U.S.C. § 1415(j); 34 C.F.R. § 300.518(a); N.Y. Educ. Law §4404(a) (McKinney).

10. The term "then-current educational placement" has been found to mean either (1) the placement described in the Student's most recently implemented IEP; (2) the operative placement functioning at the time the due process proceeding was commenced; or (3) the placement at the time of the previously implemented IEP.

11. In most cases, the term "then-current educational placement" in the stay-put provision typically refers to a child's last agreed-upon educational program before the Parent requests a due process hearing to challenge the child's IEP.

12. A student's last agreed-upon placement, or final unappealed administrative decision regarding placement, establishes a student's Pendency Placement.[3]

13. Pendency provides stability and consistency in the education of a student with a disability and prevents schools from unilaterally making decisions that would otherwise exclude disabled students from school, as was the practice before the enactment of the IDEA.

14. Each Student here suffers from a brain injury or brain-based disorder that adversely affects their educational abilities and performance.

**PENDENCY PLACEMENT FOR 2024-2025 SCHOOL YEAR**

15. During the 2024-2025 SY, each Plaintiff brought a Due Process Complaint ("DPC") against DOE alleging, among other things, that DOE did not provide their Student a FAPE for the 2024-2025 school year ("SY"), that the International Academy of the Brain ("iBRAIN") and related services was an appropriate unilateral placement, and that equities favored their

---

[3] *See Student X v. New York City Dep't of Educ.*, No. 07-CV-2316(NGG)RER, 2008 WL 4890440, at *23 (E.D.N.Y. Oct. 30, 2008); Letter to Hampden 49 IDELR 197.

request for direct payment of tuition and related services, including special transportation services and nursing services, where applicable, of the unilateral placement, in accordance with their respective agreements. U.S.C. § 1415(i) *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(i).[4]

16. As part of each DPC, Plaintiffs requested that DOE fully fund each Student's placement at iBRAIN, including special transportation and nursing services, where applicable, as pendency, to maintain the Student's status-quo educational placement, through the "stay-put" provision under 20 U.S.C. § 1415(j), since iBRAIN was the Pendency placement at the time the due process proceedings commenced, which established each Student's pendency throughout the administrative and judicial proceedings relative to each Plaintiff's DPC for the 2024-2025 SY.

17. During the 2024-2025 SY, Plaintiff Zayas filed a federal action in the Southern District of New York seeking to establish and enforce their Students' Pendency Rights for the 2024-2025 SY. The matter, *Zayas et al v. Aviles-Ramos et al*, 1:25-cv-01880-JAV, is assigned to Judge Jeannette A. Vargas. In their Complaint, the Plaintiffs requested the Court enter a Judgment under the Declaratory Judgment Act, seeking to enforce an unappealed Pendency Order by the Impartial Hearing Officer that the Student-Plaintiff's pendency program/placement to be at iBRAIN throughout the administrative and judicial proceedings relative to their DPC for the 2024–2025 school year, which includes funding tuition at iBRAIN, and all related services, including transportation and nursing services during the

[4] Attached to each Plaintiff's DPC for the 2024-2025 SY were several documents that were relevant to each Student's educational program/placement for the 2024-2025 school year. Each document was marked as an exhibit to the DPC when filed. Attached to the DPC as Exhibit A was the Ten-Day Notice; Exhibit B was the Pendency Implementation Form; Exhibit C was the legal basis for Pendency, i.e., a final administrative order; Exhibit D was a proposed Order of Pendency; Exhibit E was the iBRAIN Annual Enrollment Contract; Exhibit F was the Sisters Travel and Transportation ("Sisters") School Transportation Annual Service Agreement; and Exhibit G was the Nursing Service Annual Agreement, where applicable.

2024–2025 school year. The Plaintiffs' Motion for a Temporary Restraining Order was denied on July 8, 2025; however, Judge Vargas established an expedited scheduling order for summary judgment. The Defendants are challenging the Student's pendency placement/program and its funding obligations.

18. During the 2024-2025 SY, Plaintiff Martinez filed a federal action in the Southern District of New York seeking to establish and enforce their Students' Pendency Rights for the 2024-2025 SY. The matter, *Martinez et al v. Banks et al*, 1:24-cv-07226-LJL, is assigned to Judge Lewis J. Liman. In their Complaint, the Plaintiff requested that the Court enter a Judgment under the Declaratory Judgment Act, finding that the Student-Plaintiff is entitled to an order declaring their pendency program/placement to be at iBRAIN throughout the administrative and judicial proceedings relative to their DPC for the 2024–2025 school year, which includes funding tuition at iBRAIN, and all related services, including transportation, during the 2024–2025 school year. The Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction is currently pending before Judge Liman. The Defendants are challenging the Student's pendency placement/program and its funding obligations.

19. During the 2024-2025 SY, Plaintiff Kabba filed a federal action in the Southern District of New York seeking to establish and enforce their Students' Pendency Rights for the 2024-2025 SY. The matter, *Kabba v. New York City Department of Education*, 1:25-cv-02282-ALC, is assigned to Judge Andrew L. Carter. In her Complaint, the Plaintiff requested that the Court enter a Judgment under the Declaratory Judgment Act, finding that the Student-Plaintiff is entitled to an order declaring their pendency program/placement to be at iBRAIN throughout the administrative and judicial proceedings relative to their DPC for the 2024–2025 school year, which includes funding tuition at iBRAIN, and all related services,

including transportation and nursing, during the 2024–2025 school year. The Plaintiff's Motion for a Preliminary Injunction was denied without prejudice on July 10, 2025, by Judge Carter, granting the Plaintiff leave to file an amended complaint along with a new Preliminary Injunction in line with amended complaint. The Defendants are challenging the Student's pendency placement/program and its funding obligations.

20. Each Plaintiff has filed a DPC against DOE alleging, among other things, that DOE did not provide their Student a FAPE for the 2025-2026 SY, that iBRAIN and related services is an appropriate unilateral placement, and that equities favored their request for direct payment of tuition and related services, including special transportation services and nursing services, where applicable, of the unilateral placement, in accordance with their respective tuition, special transportation, and nursing service agreements. U.S.C. § 1415(i) *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(i).[5]

**<u>PENDENCY PLACEMENT FOR 2025-2026 SCHOOL YEAR</u>**

21. Plaintiffs bring this action on their behalf and on behalf of their respective children for a pendency order, finding that iBRAIN, along with related services such as special transportation and nursing services, where applicable, is each Student's pendency placement for the 2025-2026 SY, in accordance with their respective tuition, special transportation, and nursing services agreements between the providers and Plaintiffs.

22. "The IDEA's stay-put provision is triggered when a change in placement is proposed; a fundamental change in, or elimination of, a basic element of the educational program

[5] Attached to each Plaintiff's DPC for the 2025-2026 SY are several documents that are relevant to each Student's educational program/placement for the 2025-2026 SY. Each document was marked as an exhibit to the DPC when filed. Attached to the DPC as Exhibit A is the Ten-Day Notice; Exhibit B is the Pendency Implementation Form; Exhibit C is the legal basis for Pendency, i.e., a final administrative order; Exhibit D is a proposed Order of Pendency; Exhibit E is the iBRAIN Annual Enrollment Contract; Exhibit F is the Sisters School Transportation Annual Service Agreement; and Exhibit G is the Nursing Service Annual Agreement, where applicable.

constitutes a change in placement." *Spilsbury v. D.C.*, 307 F. Supp. 2d 22, 27 (D.D.C. 2004) (quoting *Lunceford v. D.C. Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984)).

23. An aggrieved family need not seek a pendency order through the administrative process and may instead enforce their pendency rights via injunctive order from a federal court.

24. Because there is no exhaustion of administrative remedies requirement to 20 U.S.C. § 1415(j), a federal court has jurisdiction to issue a "stay-put" or "pendency" order pending the outcome of the due process hearing.

25. Each Student has a previous unappealed order establishing iBRAIN and each Student's related services, including special transportation and nursing, where applicable, as their Pendency program/placement for the 2025-2026 SY, in accordance with their respective tuition, special transportation, and nursing service agreements.

26. Each Plaintiff requests an order declaring iBRAIN, along with special transportation and nursing services, where applicable, as their respective Student's Pendency program/placement during the administrative and/or judicial proceedings relative to their DPC for the 2025-2026 SY, in accordance with their respective tuition, special transportation, and nursing service agreements.

27. Each Plaintiff requests an order requiring Defendants to fund each Student's program/placement at iBRAIN, along with special transportation and nursing services, where applicable, in accordance with their respective tuition, special transportation, and nursing service agreements, throughout the administrative and/or judicial proceedings relative to their DPC for the 2025-2026 SY.

28. Since pendency has the effect of an automatic injunction, Plaintiffs need not meet the traditional requirements for injunctive relief, such as the likelihood of success on the merits, irreparable harm, or a balancing of the hardships, to obtain a pendency order.

29. If Plaintiffs are required to meet the traditional requirements for injunctive relief, they can show they meet such requirements.

30. Defendants are legally responsible for ensuring compliance with the New York Education Law and the IDEA within New York City.

31. Defendants have denied, and are denying, the rights of Plaintiffs and their disabled Students by failing to acknowledge and implement Plaintiff-Student's uncontested Pendency for the 2024-2025 and 2025-2026 ESYs, automatically and as required under the IDEA, timely or otherwise, and to properly fund the same for the 2024-2025 and 2025–2026 ESYs and will continue to do so in the future without Court intervention.

32. Plaintiffs seek an Order to establish the Students' pendency placement/program for 2025-2026 SY, including the financial obligations of Defendants to implement the pendency placement/program at iBRAIN, in accordance with their respective tuition, transportation and nursing service agreements, where applicable, for the 2025-2026 SY.[6]

**RESOLUTION MEETINGS AND DUE PROCESS HEARINGS**

33. By both federal and state law, failing to adhere to these legal requirements jeopardizes DOE's eligibility to receive federal funds, underscoring the necessity for immediate and continuous

[6] In *LV v. NYC DOE*, No. 03-CV-09917 (LAP), this Court held: "In December 2007, AFC and Milbank, on behalf of Lead Plaintiffs and the Class, entered into a settlement agreement with the DOE that provides injunctive and compensatory relief to class members. The Settlement was approved by the Honorable Richard J. Holwell at the Settlement Fairness Hearing held on April 10, 2008. Under the settlement, the DOE is required to implement all impartial hearing orders within the time frame stated in the order or 35 calendar days of the date of the order if no time is specified. Orders that require immediate action must be implemented within 7 business days." *See* https://advocatesforchildren.org/case/l-v-v-nyc-department-of-education/

compliance. The legal framework set forth by IDEA and New York State law establishes a clear and authoritative mandate that the NYC DOE must follow to ensure the educational rights of students with disabilities are rigorously protected. The IDEA provides a set of procedural safeguards to secure the ability of children with disabilities and their parents to give effect to other rights conferred by the Act.[7] The procedural safeguards are set forth at 20 U.S.C. § 1415 and 34 C.F.R. § 300.500 to 300.536.

34. Among the several procedural safeguards Congress provided in the IDEA for the benefit of children with disabilities and their parents, the provisions relating to the dispute resolution process are significant.

35. The Act gives students and parents the right to bring a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A).

36. Similarly, the Act provides a right to an administrative hearing for either a parent of a child with a disability or a local educational agency that disagrees with a decision.

37. Whenever a designated educational agency receives a complaint filed under either 20 U.S.C.§ 1415(b)(6)(A) or 20 U.S.C. § 1415(f)(1)(A), the party that filed the Complaint (whether a parent of a child with a disability or the local educational agency) "shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency." 20 U.S.C. § 1415(f)(1)(A). Rules of procedure for the administrative hearings are set forth at 20 U.S.C. § 1415(f)(2), ((3), and 34 C.F.R. § 300.511 to 300.515.

[7] 89 Causes of Action 2d 341 (Originally published in 2019).

38. The IDEA requires that within 15 (fifteen) days of receiving notice of a parent's due process complaint and before the start of a due process hearing under 34 C.F.R. § 300.511, the local educational agency ("LEA") shall convene a meeting with the parent and the relevant member or members of the IEP team who have specific knowledge of the facts identified in the student's Due Process Complaint ("DPC") that includes a representative of the public agency who has decision-making authority on behalf of that agency. 20 U.S.C. § 1415(f)(1)(B); 34 C.F.R. § 300.510(a)(1).

39. The mandatory nature of the resolution session, as reflected by the term "shall," reflects Congress's intent to prevent unnecessary delays and ensure that parents and students can address their concerns promptly. The statutory framework allows the resolution meeting to be waived, but only if both parties agree in writing or choose to participate in mediation instead. 34 C.F.R. § 300.510(a)(3) Neither party waived the resolution period or sought mediation in the underlying administrative cases.

40. Despite these clear statutory mandates and judicial affirmations, the DOE has engaged in a continuous and systemic practice of failing to convene resolution meetings within 15 days of receiving a parent's DPC. This failure deprives Plaintiffs and Students of their statutory right to resolve their disputes promptly.

41. These extensions were granted over the Parents' objections that they violated 8 NYCRR § 200.5(j)(5)(d)(ii)(a-d))[8] as well as the settlement Order in *JSM v. New York City Department of Education*, No. 20-cv-00705-EK-LKE (EDNY) requiring DOE, through its agent, the New

[8] An impartial hearing officer ***is required*** to consider the following factors when considering whether to grant an extension beyond the compliance date: "**(a)** whether the delay in the hearing will positively contribute to, or adversely affect, the child's educational interest or well-being; **(b)** whether a party has been afforded a fair opportunity to present its case at the hearing in accordance with the requirements of due process; **(c)** any adverse financial or other detrimental consequences likely to be suffered by a party in the event of delay; and **(d)** whether there has already been a delay in the proceeding through the actions of one of the parties."

York City Office of Administrative Trials and Hearings ("OATH"),[9] to comply with the mandatory compliance dates.

42. "Furthermore, when an IHO does extend the compliance date, state regulations require the IHO to 'promptly respond in writing to each request for an extension and [to] set forth the facts relied upon for each extension granted,' with that response to 'become part of the record.'" *S.H.W.*, 2023 WL 2753165, at *22 (quoting N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(j)(5)(d)(iv)).

43. As part of each Parent's objection to the extension request by DOE, the Parent made clear that all four factors to be considered for an extension would be adverse to the Parent. While each IHO failed to follow these regulations with a written report to be included in the record, the only grounds DOE proffered for each extension request was the unavailability of their witnesses throughout the summer. Each Parent reiterated to each IHO that the regulations are clear that vacations or witness unavailability due to scheduling conflicts are not grounds for extensions, absent a compelling reason or specific showing of substantial hardship. 8 N.Y.C.R.R. § 200.5(j)(5)(iii). No IHO ever solicited, and DOE never provided, any compelling reason or specific showing of substantial hardship.

44. Upon reasserting to each IHO the Parent's request to expedite the compliance deadlines due to the DOE's failure to have a Resolution Meeting within 15 days, each IHO rejected the Parent's request and not only kept the previous compliance dates, but then extended the compliance date due by at least 30 days due to the DOE's witnesses not be available during the summer months or the IHO's own availability to schedule a timely hearing because they were too busy.

[9] *See* https://www.nyc.gov/site/oath/special-ed/overview.page.

45. On July 23, 2013, Melody Musgrove, Ed.D., Director of Office of Special Education Programs for the U.S. Department of Education, issued a Memorandum which provides a Q&A dealing with "Dispute Resolution Procedures under Part B of the Individuals with Disabilities Education Act (Part B)".[10] Question D-13 within the guidance was, "If a party fails to participate in the resolution meeting, must the other party seek the hearing officer's intervention to address the pending due process hearing on the parent's due process complaint?" The US DOE's answer was, "Yes. The regulations in 34 CFR §300.510(b)(4) provide that an LEA may request a hearing officer to dismiss a complaint when the LEA has been unable to obtain the participation of the parent in a resolution meeting despite making reasonable efforts to do so and documenting those efforts. Under 34 CFR §300.510(b)(5), if an LEA fails to hold a resolution meeting within the required timelines or fails to participate in a resolution meeting, the parent may seek the intervention of a hearing officer to begin the due process hearing timeline. The appropriate party must seek the hearing officer's intervention to either dismiss the complaint or to initiate the hearing timeline, depending on the circumstances."

46. In the current Matter, all of the Plaintiff-Parents requested within their DPCs to seek intervention from the IHO to immediately begin the impartial hearing timelines and subsequently reiterated the request after the DOE failed to hold a Resolution Meeting within the statutory timeline of 15 days after filing of the DPC. In each of the underlying administrative proceedings, the IHO not only unilaterally rejected the Parent's request for expedited timelines without any explanation, the IHO has already granted at least one 30-day

[10] See OSEP Memo and Q&A on Dispute Resolution (July 23, 2013): https://sites.ed.gov/idea/idea-files/osep-memo-and-qa-on-dispute-resolution/.

extension request by the DOE to go beyond the originally-scheduled compliance timelines of completion within 45 days of the end of the Resolution Period.

47. Several New York City families awaiting due process hearing decisions filed a class action lawsuit in federal court against the New York City Department of Education and the New York State Education Department (the "Defendants"), on behalf of themselves and similar New York City families (*JSM v. New York City Department of Education*, No. 20-cv-00705-EK-LKE (EDNY)). The suit focused on the law requiring that hearings and final decisions for due process complaints are completed within 75 days, excluding extensions granted by the hearing officer based on applicable regulations. *See* https://www.schools.nyc.gov/learning/special-education/due-process-impartial-hearings-and-mediation.

48. On April 22, 2025, USDJ Eric Komitee granted final approval of the settlement in this case. The settlement guarantees that New York City school children will get the timely decisions they are entitled to and so desperately need. It also requires that NYCDOE and NYSED make systemic changes to improve their hearing systems, including improving their technological systems to make them more efficient; changing the way they handle resolution and settlements of complaints; providing oversight and training to hearing officers; increasing transparency into the system for families and advocates; and providing special protections for students whose hearing decisions are overdue. The DOE is in direct violation of this settlement agreement with respect to the Plaintiff-Parents in this matter.

49. Violations of the Act's procedural safeguards constitute a denial of FAPE if they have: (1) impeded the child's right to a FAPE; (2) significantly impeded the parents' opportunity to

participate in the decision-making process about the provision of FAPE to the child; or (3) caused a deprivation of educational benefits.

50. If DOE is not ordered to conclude the due process proceedings according to each Plaintiffs' expedited timelines, each Student-Plaintiff here will suffer two forms of irreparable injury: (1) a continued violation of their procedural rights outlined in 20 U.S.C. § 1415(f)(1)(B); and (2) the denial of the Parents' rights to have a timely hearing. DOE should not be allowed to continue to shirk its legal obligations under IDEA—specifically, its obligation to provide each Plaintiff with a timely due process hearing.

51. Plaintiffs seek an Order compelling the DOE through its agent, OATH SEHD, to comply with the federal and state compliance deadlines based on the expedited request by each Plaintiff or issue a decision the failure to both hold a Resolution Meeting and conduct a timely Due Process Hearing is a per se denial of FAPE.

## **JURISDICTION AND VENUE**

52. This case arises under a federal statute, the IDEA (20 U.S.C. § 1400 *et seq.*), and the regulations of the United States Department of Education, which were promulgated under authority granted by statute. 34 C.F.R. Part 300.

53. This Court has subject-matter jurisdiction of the matter pursuant to 28 U.S.C. § 1331 in that claims arise under federal law, including the IDEA and 42 U.S.C. § 1983.

54. This Court has subject-matter jurisdiction of this matter pursuant to 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), which provide for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. § 1983.

55. To the extent this case involves questions about special education rights under New York State Law, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

56. This Court may grant Declaratory Judgment under the Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, implemented through Fed. R. Civ. P. 57.

57. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Southern District of New York in that Defendants MELISSA AVILES-RAMOS, in her official capacity as Chancellor of the New York City Department of Education, and the NEW YORK CITY DEPARTMENT OF EDUCATION (collectively "Defendants") maintain a business office in New York County.

58. Plaintiffs are entitled to costs and attorneys' fees under 42 U.S.C. § 1988(b) and 20 U.S.C. §1415(j) if found to be prevailing parties.

**THE PARTIES**

59. At all relevant times herein, Defendant MELISSA AVILES-RAMOS was and is the Chancellor of the New York City Department of Education and is being sued in her official capacity as Chancellor.

60. At all relevant times herein, Defendant NEW YORK CITY DEPARTMENT OF EDUCATION is, and was, a corporate body created by Article 52 of the New York State Education Law, CLS N.Y. Educ. Law § 2550 (McKinney) *et seq.*, that manages and controls the educational affairs of the New York City public schools and is required to do so in compliance with state and federal laws and regulations not in conflict with their underlying statutory authority.

61. Defendant NEW YORK CITY DEPARTMENT OF EDUCATION is the Local Education Agency ("LEA"), defined in 20 U.S.C. § 1401 and 34 C.F.R. § 300.28, responsible for providing a FAPE to each Student with a disability.

62. The Office of Administrative Trials and Hearings Special Education Hearing Division ("OATH SEHD") is an agent of DOE responsible for scheduling pre-hearing conferences and hearings.

63. Defendants receive federal funds for their commitment to furnish a FAPE to all children with certain physical and/or intellectual disabilities in the City of New York. 20 U.S.C. §1401(3)(A) (listing covered disabilities).

64. Defendants' principal place of business is located at 52 Chambers Street, in the County and State of New York.

65. DOE's Impartial Hearing Order Implementation Unit is located at 65 Court Street, Room 1503, Brooklyn, New York 11201.

66. Plaintiff ROSA ZAYAS is the Parent and Natural Guardian of R.Z.

67. R.Z. is a twenty-one-year-old student with a disability as defined by 20 U.S.C. § 1401(3).

68. Plaintiffs ROSA ZAYAS and R.Z. lived in the City of New York at all relevant times here.

69. R.Z. is entitled to receive a FAPE and related services from DOE.

70. Since R.Z. is a student with a disability, DOE must provide him with a FAPE under the IDEA and the New York Education Law.

71. DOE must provide R.Z. with an IEP every year so long as he remains qualified under the IDEA.

72. Plaintiff LIZETTE MARTINEZ is the Parent and Natural Guardian of H.G.M.

73. H.G.M. is a twenty-two-year-old student with a disability as defined by 20 U.S.C. § 1401(3).

74. Plaintiff LIZETTE MARTINEZ and H.G.M. lived in the City of New York at all relevant times here.

75. H.G.M. is entitled to receive a FAPE and related services from DOE.

76. Since H.G.M. is a student with a disability, the DOE must provide her with a FAPE under the IDEA and New York Education Law.

77. DOE must provide H.G.M. with an IEP every year so long as she remains qualified under the IDEA.

78. Plaintiff BINTU KABBA is the Parent and Natural Guardian of O.F.

79. O.F. is a minor.

80. O.F. is a five-year-old student with a disability as defined by 20 U.S.C. § 1401(3).

81. At all relevant times, Plaintiff BINTU KABBA and O.F. lived in the City of New York.

82. O.F. is entitled to receive a FAPE and related services from DOE.

83. Since O.F. is a student with a disability, DOE must provide her with a FAPE under the IDEA and the New York Education Law.

84. DOE must provide O.F. with an IEP every year so long as she remains qualified under the IDEA.

85. Plaintiff MAYLENE OTERO is the Parent and Natural Guardian of K.R-O.

86. K.R-O. is an eighteen-year-old student with a disability as defined by 20 U.S.C. § 1401(3).

87. At all relevant times, Plaintiff MAYLENE OTERO and K.R-O. lived in the City of New York.

88. K.R-O. is entitled to receive a FAPE and related services from DOE.

89. Since K.R-O. is a student with a disability, DOE must provide her with a FAPE under the IDEA and the New York Education Law.

90. DOE must provide K.R-O. with an IEP every year so long as she remains qualified under the IDEA.

## FACTUAL ALLEGATIONS

91. The New York State Education Department and DOE have established policies and procedures, both written and informal, concerning the implementation of IDEA.

92. DOE received federal funding under IDEA during all relevant SYs.

93. Because DOE receives federal funding under IDEA, it must comply with the statute's provisions. *See* 20 U.S.C. § 1412.

94. DOE is responsible under IDEA for providing a FAPE to all students with disabilities who live in New York City.

95. Congress enacted IDEA to ensure that students with disabilities have meaningful access to public education.

96. States that participate in IDEA receive Federal Funds and agree to provide a FAPE to all children with disabilities in the state and comply with IDEA's procedural and substantive mandates.

97. New York State has chosen to participate in and implement the IDEA framework, and has established procedures for providing special education services to children with disabilities, set forth at N.Y. Educ. Law § 4401 (McKinney) *et seq.*

98. The primary mechanism for implementing IDEA's mandate of a FAPE is the IEP, as defined in 20 U.S.C. § 1401(14), 1414(d).

99. An IEP is a written statement prepared for each child with a disability that sets forth the special education and related services, supplementary aids and services, and program modifications or supports to be provided to the child, on or behalf of the child, to enable the child to achieve a comprehensive set of annual goals and short-term objectives.

100. The IDEA provides a set of procedural safeguards to secure the ability of children with disabilities and their parents to give effect to other rights conferred by the Act.

101. The dispute resolution process is one such safeguard, and the IDEA gives students and parents the right to bring a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A).

102. Whenever a designated educational agency receives a complaint filed under either 20 U.S.C.§ 1415(b)(6)(A) or 20 U.S.C. § 1415(f)(1)(A), the party that filed the complaint (whether a parent of a child with a disability or the local educational agency) "shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency." 20 U.S.C. § 1415(f)(1)(A).

103. Rules of procedure for the administrative hearings are set forth at 20 U.S.C. § 1415(f)(2), ((3), and 34 C.F.R. § 300.511 to 300.515.

104. The IDEA requires that within 15 days of receiving notice of a parent's due process complaint and before the start of a due process hearing under 34 C.F.R. § 300.511, the local educational agency ("LEA") must convene a meeting with the parent and the relevant member or members of the IEP team who have specific knowledge of the facts identified in the student's Due Process Complaint ("DPC") that includes a representative of the public agency who has decision-making authority on behalf of that agency. 34 C.F.R. § 300.510(a)(1).

105. If the DOE "has not resolved the due process complaint to the satisfaction of the parent within 30 days of the receipt of the due process complaint, the due process hearing may occur." 34 C.F.R. § 300.510(b)(1).

106. The 45-day timeline for issuing a FOFD under § 300.515 begins at the expiration of this 30-day period. 34 C.F.R. § 300.510(b)(2).

107. However, in the event that DOE fails to hold the resolution meeting within 15 days of receiving notice of a parent's DPC or fails to participate in the resolution meeting, "the parent may seek the intervention of a hearing officer to begin the due process hearing timeline." 34 C.F.R. § 300.501(b)(5).

108. Thus, when the DOE fails to conduct a resolution meeting within 15 days of the filing of the DPC, per 34 C.F.R. § 300.501(b)(5), the 45-day timeline for issuing an FOFD begins at the expiration of that 15-day period.

109. All FOFDs that are not appealed are final.

110. Here, within each DPC, the third paragraph requests for the Resolution Meeting to be conducted within 15 days or the Parent asserts their rights to expedite the due process timelines:

> In the event that the DOE fails to hold the Resolution Meeting within fifteen (15) days of receipt of the Parents' DPC or fails to participate in the Resolution Meeting, then Parents are requesting the Impartial Hearing Officer ("IHO") start the impartial hearing timeline immediately as per 34 C.F.R. §300.510(b)(5) and 8 N.Y.C.R.R. §200.5(j)(2)(vi)(b). The Parent also requests that the Impartial Hearing Office expedite this DPC by scheduling a pre-hearing conference immediately to address the ongoing violations of state and federal law as outlined below. Our Clients also request that any Impartial Hearing be open to the public as per 34 C.F.R. §300.512(c)." (footnote omitted).

111. "As mentioned, federal and state regulation authorizes a hearing to take place on a parent's due process complaint if the educational agency has not resolved the complaint within thirty days of its receipt, 34 C.F.R. § 300.510(b)(1), then requires that a final decision be reached in the hearing within forty-five days after the expiration of that thirty-day period, id. §

300.515(a); accord N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5." *S.H.W. v. New York City Department of Education*, 21-cv-4808-JPC, 2023 WL 2753165.

**ROSA ZAYAS, AS PARENT AND NATURAL GUARDIAN OF R.Z.**

112. On July 7, 2025, Plaintiff Zayas brought a DPC against DOE alleging, among other things, that DOE did not provide R.Z. a FAPE for the 2025-2026 SY, that iBRAIN was an appropriate unilateral placement for R.Z., and that equities favored a request for direct payment of tuition and related services, including special transportation and nursing services, of the unilateral placement. U.S.C. § 1415(i) *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(i).

113. In the same notice, Plaintiffs requested DOE fully fund R.Z.'s placement at iBRAIN, in accordance with the respective contracts for tuition, special transportation and nursing, as pendency, to maintain the status-quo educational placement, through the "stay-put" provision under 20 U.S.C. § 1415(j), since iBRAIN is the Pendency placement at the time the due process proceedings commenced, which established R.Z.'s Pendency throughout the administrative and judicial proceedings relative to Plaintiffs' DPC for the 2025-2026 SY.

114. The DPC was assigned IHO Case No. 296971.

115. No Resolution Meeting was held by July 22, 2025, 15 days after the filing of the DPC. Therefore, the new compliance date is September 5, 2025.

116. On August 7, 2025, the Parents' firm emailed the IHO to prepare for the PHC on August 12, 2025, reminding the IHO that the Parents were asserting their rights to expedite the due process timeline, as no Resolution Meeting was held within 15 days of the filing of the DPC.

117. The IHO emailed the parties in response, stating the issue would be addressed at the PHC.

118. After the PHC, the IHO issued a PHC Order.

119. After the PHC, the IHO scheduled the Due Process Hearings for October 1, 2025, from 10:00 a.m. to 3:00 p.m., and for October 8, 2025, from 10:00 a.m. to 3:00 p.m.

120. The IHO extended the compliance date by at least sixty days.

121. The IHO extended the compliance date in two 30-day periods without issuing a written extension order setting forth the facts relied on for each extension, and there is no evidence in the record to that effect.

122. The legal basis for Pendency, SRO Decision No. 23-299 ("SRO 23-299"), issued on February 16, 2024, by SRO Krolak, was included as Exhibit C within the DPC. The administrative proceedings for the 2024-2025 school year are still ongoing, so the final administrative order for the 2023-2024 school year is the legal basis for Pendency.

123. SRO 23-299 found: "Neither party appeal from the IHO's determination that the district failed to offer the student a FAPE for the 2023-24 school year (IHO Decision at pp.4-7). As such, this finding has become final and binding on the parties and will not be reviewed on appeal..."

> "Accordingly, I decline to disturb the IHO's determination that the unilaterally obtained 1:1 nursing services were appropriate for the student or her award to the parents of direct funding of the 1:1 nursing services without any reduction based on equitable consideration." *See* ECF No. 1-2, page 31.
>
> "The hearing record demonstrates that iBrain was an appropriate unilateral placement for the student for the 2023-24 school year and that the district did not present adequate evidence to the costs of the unilateral placement including the 1:1 transportation nursing services and special transportation services sought by the parent." [ECF No. 1-2, page 37].
>
> "IT IS FURTHER ORDERED that the district is directed to fully fund the student's 1:1 transportation nursing services and special transportation for the 2023-24 school year as set forth in the relevant contracts in the hearing;"

124. On August 8, 2025, DOE counsel advised the IHO assigned to Case No. 296971 that "The Department will be disputing pendency. I anticipate providing greater detail in advance of August 12."

125. After the PHC on August 12, 2025, Parent submitted a Pendency Brief and Exhibits.

126. On August 20, 2025, DOE submitted its Pendency Brief.

127. As of today, the IHO has issued no Pendency Order, and the DOE is still contesting its Pendency obligations for this Student.

**LIZETTE MARTINEZ, AS PARENT AND NATURAL GUARDIAN OF H.G.M.**

128. On July 7, 2025, Plaintiff Martinez brought a DPC against DOE, alleging, among other things, that DOE did not provide H.G.M. a FAPE for the 2025-2026 SY, that iBRAIN was an appropriate unilateral placement for H.G.M., and that equities favored a request for direct payment of tuition and related services, including special transportation services, of the unilateral placement. U.S.C. § 1415(i) *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(i).

129. In the same notice, Plaintiff Martinez requested DOE fully fund H.G.M.'s placement at iBRAIN, in accordance with the respective contracts for tuition, special transportation, and nursing, as pendency, to maintain the status-quo educational placement, through the "stay-put" provision under 20 U.S.C. § 1415(j), since iBRAIN is the Pendency placement at the time the due process proceedings commenced, which established H.G.M.'s Pendency throughout the administrative and judicial proceedings relative to Plaintiff Martinez' DPC for the 2025-2026 SY.

130. The DPC was assigned IHO Case No. 297085.

131. The DPC for IHO Case No. 295351 was filed on June 20, 2025.

132. On July 8, 2025, IHO consolidated IHO Case No. 297085 with IHO Case No. 295351, which was the same Student dealing with previous years of allegations.

133. In the Consolidation Order, the IHO found, "Finally, if the IHO consolidates two or more complaints, the IHO must issue a final decision by the earliest of the decision due dates." *Id.* § 200.5(j)(3)(ii)(a)(5).

134. A Resolution Meeting was held on July 3, 2025, therefore, there is no change in the compliance date of September 3, 2025.

135. On July 24, 2025, the IHO held a PHC with both parties present.

136. The IHO stated the compliance date was September 3, 2025, which was 75 days from the filing of the DPC in IHO Case No. 295351.

137. The IHO offered to hold the due process hearing on August 6, 2025. The Parent accepted that date and the DOE objected and requested a later date.

138. The Parent stated multiple times they would object to any extensions of the compliance date. The DOE requested an extension of the compliance date. The IHO granted the extension to October 3, 2025.

139. The IHO offered hearing dates of August 27, 2025, September 2, 2025, and/or September 3, 2025. The Parent immediately accepted August 27, 2025. The DOE claimed they would have "some witness availability issues" but suggested September 2, 2025, and September 3, 2025.

140. The IHO proceeded to schedule the due process hearing for September 3, 2025, beginning at 10:00am.

141. The IHO extended the compliance date for at least an additional 30 days without issuing a written extension order setting forth the facts relied on for each extension, and there is no evidence in the record to that effect.

142. The legal basis for Pendency, IHO Michelle Host's unappealed FOFD for IHO Case No. 271964, issued on July 29, 2024, was included as Exhibit C within the DPC. The administrative proceedings for the 2024-2025 school year are still ongoing, so the final administrative order for the 2023-2024 school year is the basis for this Student's Pendency.

143. FOFD # 271964 found:

> "Without an up-to-date evaluation, the CSE could not design an IEP reasonably calculated to provide the Student with meaningful benefit. Therefore, the DOE denied the Student a FAPE for the 2023-2024 school year."

> "For all of these reasons, I find that the Parent has met her Prong II burden."
>
> "While the amount of tuition at the Private School is not insignificant, I do not find that the tuition costs are excessive or unreasonable, given the Private School's educational program for the Student. *Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7, 15–16 (1993). After considering the entire record presented at hearing, I find that the equities support the Parent's claim for direct funding."
>
> "If the DOE had provided the Student with a FAPE, the Parent would not have needed to enroll the Student at the Private School and find special education transportation for the Student. The agreements signed by the Parent with the Transportation Company outline transportation services commensurate with the Student's needs, and the Deputy Director testified that such transportation was, in fact, provided...As I am finding the Private School to be the appropriate placement, I will order that the DOE directly fund the Student's transportation to and from the Private School."

144. To date, the IHO has issued no Pendency Order, and the DOE has not recognized its Pendency obligations for this student.

**<u>BINTU KABBA, AS PARENT AND NATURAL GUARDIAN OF O.F.</u>**

145. On July 7, 2025, Plaintiff Kabba brought a DPC against DOE, alleging, among other things, that DOE did not provide O.F. a FAPE for the 2025-2026 SY, that iBRAIN was an appropriate unilateral placement for O.F., and that equities favored a request for direct payment of tuition and related services, including special transportation and nursing services, of the unilateral placement. U.S.C. § 1415(i) *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(i).

146. In the same notice, Plaintiff Kabba requested DOE fully fund O.F.'s placement at iBRAIN, in accordance with the respective contracts for tuition, special transportation and nursing services, as pendency, to maintain the status-quo educational placement, through the "stay-put" provision under 20 U.S.C. § 1415(j), since iBRAIN is the Pendency placement at the time the due process proceedings commenced, which established O.F.'s Pendency throughout

the administrative and judicial proceedings relative to Plaintiff Kabba's DPC for the 2025-2026 SY.

147. The DPC was assigned IHO Case No. 297000.

148. No Resolution Meeting was held by July 22, 2025, 15 days after the filing of the DPC. Therefore, the new compliance date is September 5, 2025.

149. On August 1, 2025, 25 days after the filing of the DPC, DOE emailed the Parent suggesting that they hold a Resolution Meeting on August 8, 2025, 32 days after the filing of the DPC.

150. Parent's counsel responded to the email, adding the IHO, and rejected DOE's offer while reaffirming Parent's request to the IHO to "proceed with the due process proceedings immediately."

151. On August 6, 2025, the Parents' firm emailed the IHO to prepare for the PHC on August 13, reminding the IHO that the Parents were asserting their rights to expedite the due process timeline, as no Resolution Meeting was held within 15 days of the filing of the DPC.

152. A PHC was held on August 13, 2025, and the IHO scheduled the Due Process Hearings for September 29, 2025, from 1:00 p.m. to 5:00 p.m.

153. The IHO extended the compliance date by at least thirty days.

154. The IHO extended the compliance date for at least an additional 30 days without issuing a written extension order setting forth the facts relied on for each extension, and there is no evidence in the record to that effect.

155. The basis for O.F.'s pendency was IHO Venning's Operative Pendency Order issued on November 18, 2024, for the combined 2023-2024 and 2024-2025 school years in IHO Case No. 275761.

156. IHO Venning's pendency order found:

> O.F.'s last implemented IEP was the August 22, 2023, CPSE IEP, when O.F. was three years old in preschool; b) the Department of Education did not offer an actual

> school location or placement that could implement this CPSE IEP; and c) the iBRAIN program consisted of "a 6:1:1 class, receiving the following services: OT: four (4) times per week for 60 minutes; PT: five (5) times per week for 60 minutes; SL: five (5) times per week for 60 minutes; MT: two (2) times per week for 60 minutes; AT: one (1) time per week for 60 minutes; and PCT: one (1) time per month for 60 minutes."

157. IHO Venning's pendency order continued: "The District did not submit any exhibits" in support of their position on Pendency prior to the September 4, 2024, Pendency Hearing.

158. The IHO thereafter ordered:

> 1) the operative pendency placement at iBRAIN retroactive to the date Plaintiffs filed the DPC (June 26, 2024 in Case No. 275761), 2) that pendency shall remain at iBRAIN "unless modified by a subsequent order or agreement, shall continue until the conclusion of the case" and 3) "Within one week of this order, the District shall provide a school location" that could implement the CPSE IEP. DOE never provided an actual school location for pendency at any time during the proceedings in IHO Case No. 275761, nor was there a subsequent order or agreement, and the Parent's position continues to be that the Operative Pendency placement remains at iBRAIN.

159. IHO Venning issued an FOFD in IHO Case No. 275761 on May 6, 2024, finding:

> 1) the District denied the Student a FAPE for 2023-2024 and 2024-2025 school years (Prong I), 2) the unilateral placement "was not reasonably calculated to enable Student's progress (Prong II), and 3) equitable considerations would deny the Parents all of the relief sought (Prong III), except the Parent was entitled to an Independent Education Evaluation at District's expense.

160. The Plaintiff timely appealed the FOFD, and the DOE cross-appealed, including an appeal of the pendency order, which was filed after the 2024-2025 school year concluded. The DOE requested more than one extension from the SRO to submit its brief, further delaying the administrative proceedings. The enforcement of the pendency order in IHO Case No. 275761 is currently in federal court, *Kabba v. New York City Department of Education*, 1:25-cv-02282-ALC.

161. DOE is contesting its pendency obligations for O.F. as outlined in its August 20, 2025, pendency submission, which was made 44 days after the Parent filed their DPC.

162. To date, the IHO has issued no pendency order regarding Plaintiff's DPC for the 2025-2026 school year.

**MAYLENE OTERO, AS PARENT AND NATURAL GUARDIAN OF K.R-O.**

163. On July 8, 2025, Plaintiff Otero brought a DPC against DOE, alleging, among other things, that DOE did not provide K.R-O. a FAPE for the 2025-2026 SY, that iBRAIN was an appropriate unilateral placement for K.R-O., and that equities favored a request for direct payment of tuition and related services, including special transportation and nursing services, of the unilateral placement. U.S.C. § 1415(i) *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(i).

164. In the same notice, Plaintiff Otero requested DOE fully fund K.R-O.'s placement at iBRAIN, in accordance with the respective contracts for tuition, special transportation and nursing services, as pendency, to maintain the status-quo educational placement, through the "stay-put" provision under 20 U.S.C. § 1415(j), since iBRAIN is the Pendency placement at the time the due process proceedings commenced, which established K.R-O.'s Pendency throughout the administrative and judicial proceedings relative to Plaintiff Otero's DPC for the 2025-2026 SY.

165. The DPC was assigned IHO Case No. 297275.

166. No Resolution Meeting was held by July 23, 2025, 15 days after the filing of the DPC. Therefore, the new compliance date is September 6, 2025.

167. On August 6, 2025, the Parents' firm emailed the IHO to prepare for the PHC on August 13, 2025, reminding the IHO that the Parents were asserting their rights to expedite the due process timeline, as no Resolution Meeting was held within 15 days of the filing of the DPC.

168. A PHC was held on August 13, 2025, and the IHO scheduled the Due Process Hearings for October 10, 2025, from 10:30 a.m. to 3:30 p.m.

169. The IHO extended the compliance date by at least sixty days.

170. The IHO extended the compliance date in two 30-day periods without issuing a written extension order setting forth the facts relied on for each extension, and there is no evidence in the record to that effect.

171. The legal basis for K.R-O.'s pendency is SRO Decision No. 24-444 ("SRO 24-444"), issued on December 18, 2024, by SRO Krolak, which was included as Exhibit C within the DPC. [ECF No. 1-19, pages 19-31.]

172. SRO 24-444 found:

> "Here, the district did not appeal from the IHO's determination that the district failed to meet its burden to demonstrate that it provided the student with a FAPE for the extended 2024-25 school year, that the parent established that the student's unilateral placement at iBrain was appropriate...Accordingly, these findings have become final and binding on the parties and will not be reviewed on appeal...Having determined that these issues are final and binding, the focus of the appeal centers around the IHO's determinations as to the parties' conduct related to the resolution meeting and whether equitable considerations weigh against all or a portion of the relief awarded by the IHO." [ECF No. 1-19, page 27]. relief, the necessary inquiry is at an end."
>
> "It is worth noting that the IHO did not award payment based only on service dates for which the services were used, but simply directed that the parent must submit invoices documenting the use of the services including delivery dates. Such an award is consistent with the contracts that the parent entered into and merely requires that the parent submit evidence showing that the nursing services and transportation providers performed under the contracts, by showing that services were delivered pursuant to those contracts, prior to having the district make payments."
>
> "Having determined that the IHO was justified in finding that the parties' actions during the resolution meeting did not warrant either dismissal of the parent's due process complaint notice or a reduction of the funding awarded under equitable considerations and having determined that equitable considerations weigh in favor of granting the parent's requested relief, the necessary inquiry is at an end."

173. The DOE objected to Pendency. Both parties submitted briefs regarding pendency and on August 13, 2025, the IHO issued a pendency order as follows: "The Student's pendency program is the following: Private School Tuition for 12 months, Funding for Transportation to

and from the private school for 12 months, Funding for an nurse during Student's attendance at private school and transportation to and from the private school for 12 months."

174. The DOE has 40 days to appeal the pendency order before it becomes binding for implementation.

175. DOE will claim it has until September 22, 2025 (76 days from the filing of the DPC) to implement the pendency order "in the normal course."

176. If DOE appeals, it will withhold pendency funding until a decision is reached.

177. Because pendency is automatic and takes effect based on the last unappealed administrative order, no further order is required.

**DOE'S ONGOING SYSTEMIC VIOLATIONS INCLUDE FAILURE TO IDENTIFY AND IMPLEMENT PENDENCY PLACEMENTS**

178. DOE has no policies or procedures in place to ensure timely implementation of stay-put rights upon the filing of a DPC.

179. DOE engages in spurious and dilatory tactics when it comes to its obligation to fund pendency programs and placements, often assuring parents and counsel that it is "processing payments" and will disburse them in their "due course."

180. In administrative and judicial proceedings, DOE refuses to define "due course" when it comes to processing pendency payments.

181. According to the public testimony of DOE General Counsel, Liz Vladeck, at a NYC Council meeting on January 30, 2025, Ms. Vladeck testified about the DOE's "normal due course" of issuing payments that once a payment is authorized: payment is made the same day or within a day. Ms. Vladek was asked to describe how the *L.V.* litigation relates to the DOE's current funding process, and responded:

"1:48:12 So the LV litigation covers, due process cases.

> 1:48:16 So once an impartial hearing officer makes a decision, issues an order saying here's what DOE has to do to implement the IEP or IESP.
> 1:48:26 The case goes over to the implementation team on in within the office of the general counsel, which has to break down the decision from the hearing officer, make sure it's clear what relief has been requested, seek certain authorizations, whether it's from providers, parents, or attorneys, make sure we've got a clear basis for what it is we'd be paying for, and then move forward to authorize those payments.
> 1:48:51 That process then moves over to the division of financial operations, which my understanding is, is getting payments out the day they receive our authorization or within a day."[11],[12]

182. In this matter, the Plaintiffs are not seeking to "fast-track" pendency funding, but rather request a reasonable time period in accordance with the tuition, special transportation and nursing agreements.

183. In this matter, the Plaintiffs are not seeking "immediate" pendency funding, but rather request a reasonable time period in accordance with the tuition, special transportation and nursing agreements.

184. DOE does not resolve or settle DPCs, contributing to its backlog and notoriously slow calendars.

185. Historically, DOE has approached none of the Plaintiffs here, as required by the IDEA, to discuss resolving or settling each Plaintiff's claims.

186. Each Plaintiff reserves the right to move for reasonable attorneys' fees as the prevailing party in the underlying administrative proceedings, as well as here, as this litigation is necessary because of Defendants' continued refusal to follow the mandates of the IDEA.

---

[11] See https://citymeetings.nyc/meetings/new-york-city-council/2025-01-30-0100-pm-committee-on-education/chapter/does-current-process-for-paying-providers/

[12] See https://citymeetings.nyc/meetings/new-york-city-council/2025-01-30-0100-pm-committee-on-education/chapter/timeline-expectations-for-non-delayed-payments/

## JOINDER AND SEVERANCE

187. Each Plaintiff's claim arises from the same transaction, occurrence, series of transactions, and occurrences, and they have common questions of law and fact.

188. For each Plaintiff, Defendants violated their rights to a timely resolution meeting, due process hearing, and decision on their respective Due Process Complaints.

189. For each Plaintiff, Defendants are failing and refusing to acknowledge their Pendency obligations, and to implement and fund the Students' pendency placements.

190. Plaintiffs are properly joined under Fed. R. Civ. P. 20(a)(1).

191. Joining all Plaintiffs here creates a manageable group of Plaintiffs.

192. Joining all Plaintiffs here reduces unnecessary litigation and delays, promotes judicial efficiency, and avoids overburdening a single Judge and their resources.

193. If more than one action before this Court involves a common question of law or fact, this Court may consolidate the actions. Fed. R. Civ. P. 42(a)(2).

194. A district court should consider equity and judicial economy when assessing whether consolidation or joinder is appropriate in given circumstances.

## ATTORNEYS' FEES

195. In any action or proceeding brought under the IDEA, a court of competent jurisdiction may award reasonable attorneys' fees as part of the costs to a "prevailing party" who is the parent of a child with a disability. 20 U.S.C. § 1415(i)(3)(B)(I) and 34 C.F.R. § 300.517(a)(1)(i).

196. A parent may be eligible for attorneys' fees if deemed a "prevailing party" in an IDEA action.

197. A parent is considered a "prevailing party" if the parent achieves success on any significant issue in the litigation or proceeding that achieves some of the benefit sought, and the manner of the resolution of the dispute constitutes a change in the legal relationship of the parties.

198. In IDEA administrative proceedings, relief ordered by an administrative officer alters the legal relationship between the parties.

199. In IDEA proceedings, where an administrative officer issues an order in favor of the parent of a child with a disability, the parent is the prevailing party.

200. The respective final administrative order for each Plaintiff altered the legal relationship between DOE and that Plaintiff.

201. Plaintiffs are the prevailing party in the underlying administrative proceedings.

202. At all times set forth here, Plaintiffs were represented by the Liberty and Freedom Legal Group, Ltd., by and through its attorneys, associates, and other legal staff employed thereby, in the administrative proceedings brought against Defendants under the IDEA and New York State's Education Laws, relative to the DPCs filed.

203. Plaintiffs are entitled to reasonable attorneys' fees as the prevailing party in the underlying administrative proceedings.

204. Plaintiffs' law firm, its attorneys, and legal staff dedicated significant hours representing Plaintiffs in the IDEA proceedings.

205. Plaintiff requests an award of reasonable attorneys' fees as the prevailing parties in the underlying administrative proceedings, in an amount to be provided at a date after the filing of this Complaint.

**AS AND FOR THE FIRST CAUSE OF ACTION**

206. Plaintiffs have been harmed by DOE's failure to implement the final administrative order issued in their favor as set forth above and herein and will continue to suffer such harm until DOE implements the pendency and final administrative orders in accordance with its terms.

207. DOE's failure and/or refusal to implement and/or comply with Plaintiff's pendency and final administrative order in this case, requiring DOE to fully fund Student's placement at iBRAIN[13] as set forth therein, has denied, and continues to deny Plaintiff their rights as set forth under the IDEA, 20 U.S.C. § 1401, *et seq.*, the federal regulations promulgated thereunder, 34 C.F.R. Part 300, Article 89 of the New York State Education Law, and the Regulations of the Commissioner of Education, Part 200.

**AS AND FOR THE SECOND CAUSE OF ACTION**

208. Plaintiffs repeat, reallege, and reaffirm each allegation set forth above as if set forth more fully herein.

209. An action that alleges a violation of the pendency provision falls under at least one exception to the IDEA's requirement for the exhaustion of administrative remedies before filing suit in federal court.

210. Pendency provides stability and consistency in the education of students with a disability and prevents schools from unilaterally making decisions that would otherwise exclude disabled students from school, as was the practice before the enactment of the IDEA.

211. A student's last agreed-upon placement—a final, unappealed administrative order—establishes a student's current educational placement for pendency.

212. Defendants have violated each Plaintiff's right to a FAPE under the IDEA.

---

[13] The Student's placement includes the DOE's funding obligations under the Student's Pendency in accordance with the tuition, special transportation, and nursing agreements, inclusive of Late Fees.

213. Defendants have violated Plaintiffs' rights to their stay-put placements.

214. Defendants have violated the IDEA by implementing broad and indiscriminate policies, practices, and procedures, as well as policies, practices, and procedures contrary to the IDEA.

215. Defendants have violated Plaintiffs' procedural and due-process rights under the IDEA.

216. Defendants violated Plaintiffs' rights under 42 U.S.C. § 1983 by failing to have adequate policies, procedures, protocols, and training to ensure that the long-standing provisions of the IDEA and New York State special education laws are being implemented.

217. Defendants have violated the rights of Plaintiffs under N.Y. Educ. Law §§ 3202, 3203, 4401, 4404, and 4410, and § 200 (McKinney) of the Regulations of the New York State Commissioner of Education, 8 N.Y. COMP. CODES R. REGS.

218. As a direct and proximate result of Defendants' violations as alleged herein, Plaintiffs have suffered damages.

219. Each Student here currently attends iBRAIN and has an order establishing iBRAIN, along with special transportation and nursing services, where applicable, as their Pendency placement for the 2025-2026 SY.

220. Plaintiffs are entitled to a declaration that iBRAIN, along with special transportation and nursing services, where applicable, is each Student's Pendency placement for the 2025-2026 SY, and that DOE is required to fund that Pendency placement during the pendency of each Student's relevant due process proceedings.

**AS AND FOR THE THIRD CAUSE OF ACTION**

221. Plaintiffs repeat, reallege, and reaffirm each allegation set forth above as if set forth more fully herein.

222. As the LEA, Defendants are legally responsible for ensuring compliance with the IDEA within New York City.

223. Defendants have violated, and are violating, the rights of Plaintiffs and their disabled Students by failing to implement Plaintiffs' uncontested Pendency placements/programs, as required by the IDEA.

224. Defendants failed to properly and timely fund the Pendency placements/programs for the 2025-2026 SY in accordance with each Plaintiff's respective agreements for tuition, special transportation, and nursing service, where applicable.

225. Defendants have failed to establish effective policies and procedures for identifying, implementing, and funding special education students' Pendency placements/programs, and then failed to abide by any policies and procedures.

226. Defendants have violated Plaintiffs' rights under 20 U.S.C. § 1415 and 34 C.F.R. § 300.515(a) and deprived Plaintiffs of a free appropriate public education under 20 U.S.C. § 1400 *et seq.* and New York State's Education Law.

227. Plaintiffs' rights under the IDEA are enforceable under 42 U.S.C. § 1983 as Defendants have acted under color of state law, as well as under 20 U.S.C. § 1415.

228. Defendants have acted with deliberate indifference in engaging in the policies, practices, and customs that have led to these violations, despite clear notice that their policies, practices, and customs have caused the violations, and without correcting the policies, practices, and customs. These policies, practices, and customs constitute Defendants' de facto unlawful, illegal, and improper policy.

229. As a direct and proximate result of Defendants' violations as alleged herein, Plaintiffs have suffered damages.

230. Plaintiffs are entitled to an injunction directing Defendants to fully fund each Student's Pendency placement at iBRAIN, along with special transportation and nursing services, where applicable, directly to the respective providers and pursuant to the relevant agreements between each Plaintiff and said providers, including any accrued Late Fees, during the pendency of each Student's relevant due process proceedings.

**AS AND FOR THE FOURTH CAUSE OF ACTION**

231. Plaintiffs repeat, reallege, and reaffirm each allegation set forth above as if set forth more fully herein.

232. Defendants are legally responsible for ensuring compliance with the New York Education Law, as well as the IDEA, within New York City.

233. Defendants have violated, and are violating, the rights of Plaintiffs and their disabled Students by failing to implement Plaintiffs' Pendency placements/programs, automatically and as required under the IDEA and New York Education Law, and to properly fund the same for the 2025-2026 school year.

234. Defendants have failed to fund Plaintiffs' Pendency placements/programs in a timely and comprehensive manner in accordance with each Plaintiff's respective agreements for tuition, special transportation, and nursing services, where applicable. Continued delays in funding pendency may incur Late Fees associated with the withholding of pendency funding for tuition, special transportation, and nursing services, where applicable.

235. Defendants have failed to establish effective policies for identifying, implementing, and funding special education students' Pendency placements/programs and have consistently failed to follow their own policies and procedures.

236. Defendants have violated Plaintiffs' rights under N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(j)(5) and have deprived Plaintiffs of a FAPE under the New York Education Law and the IDEA.

237. Plaintiffs' rights under the New York Education Law are enforceable under N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(k)(3), and the IDEA, as well as under this Court's equitable powers.

238. As a direct and proximate result of Defendants' violations as alleged herein, Plaintiffs have suffered damages.

239. As a result of these violations, Plaintiffs are entitled to injunctive and declaratory relief, the nominal relief requested herein, other equitable relief, and costs and attorneys' fees.

**AS AND FOR THE FIFTH CAUSE OF ACTION**

240. Plaintiffs reiterate, repeat, and reaffirm each of the allegations set forth above, as if more fully set forth herein.

241. During the Pendency of the due process proceedings, unless the school district and the Parent agree otherwise, federal and State law require the child to remain in their then-current educational placement. *See* 20 U.S.C. § 1415 (j); 34 C.F.R. § 300.518 (a); N.Y. Educ. Law § 4404(a) (McKinney).

242. The phrase "then-current educational placement" means either (1) the placement described in the student's most recently implemented IEP, (2) the operative placement actually functioning at the time the due process proceedings commenced, or (3) the placement at the time of the previously implemented IEP.

243. A student's last agreed-upon placement, or final unappealed administrative decision regarding placement, establishes a student's Pendency Placement.

244. Pendency provides stability and consistency in the education of a student with a disability and prevents schools from unilaterally making decisions that would otherwise exclude disabled students from school, as was the practice before the enactment of the IDEA.

245. The respective FOFDs described herein declared iBRAIN as the Students' Pendency Placements in accordance with the tuition, special transportation and nursing service agreements.

246. Plaintiff-Students have final administrative orders establishing iBRAIN as their Pendency Placements throughout any administrative and judicial proceedings relating to the 2025-2026 ESY.

247. Plaintiffs request that this Court enter an Order declaring that iBRAIN is Plaintiff-Students' Pendency Placement with respect to the 2025-2026 ESY, including tuition, related services, special transportation, and nursing services, in accordance with the terms detailed in the tuition, special transportation, and nursing services agreements.

**AS AND FOR THE SIXTH CAUSE OF ACTION**

248. Plaintiffs reiterate, repeat, and reaffirm each of the allegations set forth above, as if more fully set forth herein.

249. Plaintiffs were entitled to an impartial due process hearing conducted by the Defendant DOE, through their agent OATH SEHD.

250. DOE was required to convene resolution meetings within 15 days of receiving notice of the Parent's DPC and before the start of a due process hearing, pursuant to 34 C.F.R. § 300.510(a)(1).

251. DOE failed to convene resolution meetings with Plaintiff and a representative of DOE within 15 days of the filing of the DPCs, as required by 34 C.F.R § 300.510(a)(1) and 20 U.S.C. 1415(f)(1)(A).

252. DOE failed to conclude the due process hearing within 45 days after the end of the Resolution Period for each Plaintiff's DPC.

253. By failing to adhere to and/or implement the timelines as set forth in 34 C.F.R. § 300.501(b)(5), Defendants have deprived and continue to deprive Plaintiff and her child of their rights under Section 1415 of the IDEA and the federal regulations set forth at 34 C.F.R. § 300.500 to 300.536.

254. Defendants' actions and omissions violate the IDEA, 20 U.S.C. § 1401 et seq., the Federal Regulations promulgated thereunder (34 C.F.R. Part 300), Article 89 of the New York State Education Law, and the Regulations of the New York State Commissioner of Education (Part 200).

**AS AND FOR THE SEVENTH CAUSE OF ACTION**

255. Plaintiffs repeat, reallege, and reaffirm each allegation set forth above as if set forth more fully herein.

256. The Fourteenth Amendment prohibits the deprivation of Plaintiffs' Students' right to an education, which is implicit in the concept of ordered liberty, and mandated by the New York State Constitution.

257. Defendants' failure to ensure the Students' uncontested Pendency placements/programs for the 2025-2026 school year have been implemented and funded has denied Students their rights to a FAPE. In so doing, Defendants have violated the Due Process Clause of the Fourteenth Amendment.

258. Defendants have been on notice of systemic unlawful delays and failures in implementing Pendency placements/programs and have acted with deliberate indifference and gross misjudgment.

259. Defendants' failure to implement Plaintiffs' Pendency placements/programs has caused discrimination against the Students by denying them access to a FAPE.

260. Defendants have acted under color of law, and their actions, policies, and procedures lack sufficient objective standards to remedy their violations, allowing for ad hoc, arbitrary, and discriminatory implementation of Plaintiffs' Pendency placements.

261. As a direct and proximate result of Defendants' violations as alleged herein, Plaintiffs have suffered damages.

262. As a result of these violations, Plaintiffs are entitled to injunctive and declaratory relief, other equitable relief, and costs and attorneys' fees.

**AS AND FOR THE EIGHTH CAUSE OF ACTION**

263. Plaintiffs are the prevailing party in the administrative proceedings under IDEA. The unappealed FOFD and SRO Decisions altered the legal relationship between Plaintiffs and DOE, requiring DOE to fully fund Students' educational placement and related services.

264. At all relevant times, Plaintiff were represented by the Liberty and Freedom Legal Group, Ltd., a law firm experienced in representing families of students with disabilities in proceedings under the IDEA.

265. Plaintiffs, as the prevailing party in the administrative proceeding brought under the IDEA, respectfully seek reasonable attorneys' fees under 20 U.S.C. § 1415(i)(3)(B)(I).

266. Plaintiffs also seek reasonable attorneys' fees incurred in prosecuting this federal action to enforce the final administrative orders and Students' "stay-put" rights and enforce the

procedural timelines set forth in 34 C.F.R. § 300.500 *et seq.*, as permitted under 42 U.S.C. § 1983.

267. Should Plaintiffs prevail in this federal action, they will also be a prevailing party under the IDEA and 42 U.S.C. § 1983.

268. Plaintiffs are entitled to reasonable attorneys' fees, "fees on fees," and costs for the time spent and costs incurred in prosecuting this federal action.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs respectfully request that this Court:

1. Enter a Declaratory Judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that each Student's Pendency program/placement is at iBRAIN throughout the administrative and judicial proceedings relative to their DPCs for the 2025-2026 SY. This declaration should include that each Student is entitled to full funding of tuition at iBRAIN, along with all related services, including but not limited to special transportation and nursing services, where applicable, with the respective private service provider, in accordance with the agreements between Plaintiffs and the providers, where appropriate, during the 2025-2026 SY.

2. Issue an Injunction declaring that Defendants violated Plaintiffs' and Student-Plaintiffs' rights as set forth herein, and ordering Defendants to:

   a. Comply with the IDEA's Pendency Provision under 20 U.S.C. § 1415(j), and eliminate any requirement that compels Parents to wait months in violation of the IDEA to obtain an "interim order" from an Impartial Hearing Officer ("IHO") or accept a pendency form/agreement from DOE. This injunction should ensure that each Student's "last agreed-upon" placement is maintained without delay, as a matter of law, in accordance with their respective 2025-2026 SY agreements for tuition, special transportation, and nursing services, where applicable.

   b. Implement Pendency Funding for each Student's educational program in the ordinary course of business, without undue delay, so as to prevent disruption in the provision of services to the Students in accordance with the respective agreements for tuition, special transportation, and nursing services, where applicable. Plaintiffs further request that this Court order Defendants to ensure pendency funding begins no later than 35 days from the date of this Court's order, consistent with the Order in *LV v. New York City Dep't of Educ.*, No. 03-CV-9917 (LAP), 2021 WL 663718 (S.D.N.Y. February 18, 2021), with regular

updates to ensure continued compliance. Plaintiffs further request that this Court order Defendants to make payments in accordance with the respective agreements for tuition, special transportation, and nursing services, where applicable, including any incurred Late Fees associated with delayed or withheld payments.

c. Comply with Final Orders and Pendency Orders by immediately implementing and adhering to all final, unappealed administrative orders, including the funding of the Students' tuition, related services, transportation, and any other provisions mandated by these orders. Plaintiffs request that this Court hold Defendants accountable for their systemic failure to enforce these orders and to ensure that no further delays or violations occur.

d. Compelling Defendants to comply with the timelines for convening and resolution meetings and due process hearings, and concluding the impartial hearing process, as set forth in 20 U.S.C. § 1415 and 34 C.F.R. § 300.501(b).

e. Pay Costs and Attorneys' Fees associated with maintaining this action, including reasonable attorneys' fees under 20 U.S.C. § 1415(i)(3)(B), 42 U.S.C. § 1988(b), and 34 C.F.R. § 300.517(a)(1)(i) and "fees on fees" for time spent and incurred.

3. Grant such other, further, and different relief as may be appropriate under the IDEA.

4. Grant such other, further, and different relief as this Court may deem just, proper, and equitable, including compensatory education, damages where appropriate under the 42 U.S.C. § 1983 claims, and other equitable remedies to ensure the continuation of FAPE for the Students during the pendency of these proceedings.

Dated: September 11, 2025
New York, New York

Respectfully submitted,
Liberty & Freedom Legal Group, Ltd
*Attorneys for Plaintiff*

By: ___/s/ Nicole Lancia_________

Nicole Lancia, Esq.
105 East 34th Street, Suite 190
New York, New York 10016
(646) 850-5035
nicole@pabilaw.org