UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROSA ZAYAS, as Parent and Natural Guardian of R.Z., and ROSA ZAYAS, Individually;

LIZETTE MARTINEZ, as Parent and Natural Guardian of H.G.M., and LIZETTE MARTINEZ, Individually;

BINTU KABBA, as Parent and Natural Guardian of O.F., and BINTU KABBA, Individually;

MAYLENE OTERO, as Parent and Natural Guardian of K.R.-O., and MAYLENE OTERO, Individually;

Plaintiffs,

-against-

MELISSA AVILES-RAMOS, in her official capacity as Chancellor of the New York City Department of Education, and the NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  12/1/2025_____

25 Civ. 7561 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiffs are the parents of four students with disabilities who are enrolled at the International Academy for the Brain ("iBRAIN").  On September 11, 2025, they brought this action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, against Defendants, the New York City Department of Education and its Chancellor (collectively, the "DOE" or the "Department"), alleging that the DOE failed to identify, implement, and fund the students' pendency placements for the 2025–2026 school year ("SY").  *See generally* Compl., ECF No. 1.  Before the Court are two motions for a preliminary injunction (1) ordering the DOE to adhere to an expedited hearing timeline for their state administrative proceedings, *see* Mot. I, ECF No. 6; Mem. I, ECF No. 8; *see also* Opp. I, ECF No. 20; Reply I, ECF No. 25, and (2)

establishing the students' pendency placement for the 2025–2026 SY and ordering the DOE to fund those placements, Mot. II, ECF No. 13; Mem. II, ECF No. 16; *see also* Opp. II, ECF No. 24; Reply II, ECF No. 26; Pl. Ltr., ECF No. 30.[1]  The Court denies the first motion, and grants in part and denies in part the second motion.

**BACKGROUND**[2]

I.    <u>Legal Framework</u>

"The IDEA offers federal funds to states that demonstrate, *inter alia*, that they have developed plans to assure 'all children with disabilities residing in the state' a 'free appropriate public education' ('FAPE')." *Mackey ex rel. Thomas M. v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 386 F.3d 158, 159-60 (2d Cir. 2004) (quoting 20 U.S.C. § 1412(a)(1)(A)).  School districts must create an individualized education program ("IEP") for qualifying children to ensure they receive a FAPE.  20 U.S.C. § 1414(d).  "The IDEA requires that an IEP be 'reasonably calculated to enable the child to receive educational benefits.'"  *R.E. v. New York City Dept. of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012) (citation omitted).  If a parent believes that the IEP is inadequate and that DOE thus failed to provide their child with a FAPE, "the parent may file a 'due process complaint' (a type of administrative challenge unrelated to the concept of constitutional due process) with the appropriate state agency."  *Id.* (citing 20 U.S.C. § 1415(b)(6)).

Under New York's administrative system, the parties first engage in a resolution meeting, which the local educational agency ("LEA") must initiate within 15 days of receiving the due process complaint ("DPC").  20 U.S.C. § 1415(f)(1)(B)(i); 34 C.F.R. § 300.510(a)(1).[3]  If the LEA

---

[1] Having reviewed the parties' briefing, the Court finds that the material facts here are not in dispute and, therefore, decides Plaintiffs' motion for a preliminary injunction without a hearing.  *See Hammer v. Trendl*, No. 02 Civ. 2462, 2003 WL 21466686 at *2 (E.D.N.Y. Jan. 18, 2003).

[2] The Court presumes familiarity with the facts underlying this action and summarizes only the facts relevant to Plaintiffs' motion for a preliminary injunction.

[3] The resolution meeting need not be held if the parent and LEA agree in writing to waive the meeting or the parent and LEA agree to mediation.  34 C.F.R. § 300.510(a)(3).

2

"fails to hold the resolution meeting within 15 days of receipt of the parents' due process complaint or fails to participate in the resolution meeting, the parent may seek intervention of the impartial hearing officer to begin the due process hearing timeline."  34 C.F.R. § 300.510(b)(5).  If a resolution meeting is held and the LEA "has not resolved the due process complaint to the satisfaction of the parent within 30 days of the receipt of the due process complaint, the due process hearing may occur."  34 C.F.R. § 300.510(b)(1).  The due process hearing is conducted by an Impartial Hearing Officer ("IHO").  *See* 20 U.S.C. § 1415(f)(1)(A).  The IHO has 45 days after the end of the resolution process to hold a hearing, review the evidence, and issue a final hearing decision.  30 C.F.R. § 300.515(a).[4]  After an IHO has issued a decision, either party may appeal that decision to the State Review Officer ("SRO").  N.Y. Educ. L. § 4404(2).  Either party may then seek review of the SRO's decision in state or federal court.  20 U.S.C. § 1415(i)(2)(A).

The IDEA contains a "stay-put" or "pendency" provision that entitles children to "remain in [their] then-current educational placement" at public expense "during the pendency of any proceedings." 20 U.S.C. § 1415(j).  "Parents can also unilaterally change their child's placement during the pendency of review proceedings—for instance, by enrolling them in private school— but they do so at their own financial risk."  *Mendez v. Banks*, 65 F.4th 56, 59 (2d Cir. 2023) (cleaned up).  "[P]arents can obtain funding for a new placement if an IHO or SRO finds it to be appropriate and issues a pendency order, and the school district does not appeal the decision, thereby agreeing impliedly by law to the child's educational program."  *Id*. (cleaned up).

To obtain a preliminary injunction, Plaintiffs must show (1) "a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation

---

[4] An IHO may, however, "grant specific extensions of time . . . at the request of either party."  34 C.F.R. § 300.510(c).  In general, "a request for an extension shall not be granted because of school vacations, a lack of availability resulting from the parties' and/or representatives' scheduling conflicts, avoidable witness scheduling conflicts or other similar reasons."  8 N.Y.C.R.R. § 200.5(j)(5)(iii).

and a balance of hardships tipping decidedly in the [P]laintiffs' favor"; (2) "that they are likely to suffer irreparable injury in the absence of an injunction"; (3) "that the balance of hardships tips in their favor"; and (4) "that the public interest would not be disserved by the issuance of a preliminary injunction." *Id.* at 63–64 (cleaned up).

II.    Factual Background

Plaintiffs are parents and guardians of four students with disabilities:  R.Z., H.G.M., O.F., and K.R.-O.  *See generally* Compl.  In July 2025, Plaintiffs each filed a DPC alleging that the DOE did not provide their children with a FAPE for the 2025–2026 SY.  *See* Compl. ¶¶ 112, 128, 145, 163; ECF Nos. 9-2 at 2, 9-8 at 2, 9-17 at 2.[5]  Plaintiffs R.Z. and K.R.-O. have pendency orders in place for the 2025–2026 SY, and the other student Plaintiffs have scheduled due process hearing dates.  *See* Opp. II at 3; ECF Nos. 15-2, 15-5.  The DOE "acknowledges that all the student Plaintiffs' last agreed-upon placement lies at iBRAIN."  Opp. II at 7.

**DISCUSSION**

I.    Expedited Hearing Request

Plaintiffs are not entitled to a preliminary injunction compelling Defendants to adhere to Plaintiffs' request for an expedited hearing or declaring that "Defendants' failure to hold a Resolution Meeting and conduct a timely Due Process Hearing is a per se denial of FAPE."  Mot. I at 2.

Plaintiffs have not demonstrated irreparable harm.  "A showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Ogunleye v. Banks*, No. 23 Civ. 9092, 2025 WL 1078301, at *1 (S.D.N.Y. Mar. 27, 2025) (quoting

---

[5] The declaration of Zeal Patel at ECF No. 9 states that a "true and accurate copy" of the DPC brough by Plaintiff Kabba against DOE for the 2025–2026 SY is attached as Exhibit 8 to the declaration.  However, Exhibit 8 is Kabba's DPC for the 2024–2025 SY, not the 2025–2026 SY.  *See* ECF No. 9-13.

*Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990)). "Irreparable harm is an injury that is not remote or speculative but actual and imminent, and for which a monetary award cannot be adequate compensation." *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) (citation omitted). As the DOE admits, and the Court determines, the students in question will be attending iBRAIN through the IDEA's pendency provision; thus, they will continue to attend iBRAIN at public expense for as long as the administrative proceedings continue. *See* Opp. II at 2–3. Plaintiffs have presented no evidence that any student is at risk of losing placement at iBRAIN as a result of the hearing dates set for Plaintiffs' DPCs. *See Fiallos v. Aviles-Ramos*, No. 25 Civ. 7281, 2025 WL 2961624, at *4 (S.D.N.Y. Oct. 20, 2025); *see also Moonsammy v. Banks*, No. 24 Civ. 2616, 2024 WL 2831042, at *7 (S.D.N.Y. June 3, 2024) (explaining that iBRAIN enrollment contract suspends any obligation on a student's families' part to pay for the student's tuition until they receive a DOE order on pendency). Plaintiffs argue that if "DOE is not ordered to conclude the due process proceedings according to each Plaintiff's expedited timelines," Plaintiffs will suffer irreparable injury in the form of "a continued violation of [the students'] procedural rights" and the "denial of the Parents' rights to have a timely hearing." Compl. ¶ 50. But a "bare procedural violation" does not constitute irreparable harm. *Fiallos*, 2025 WL 2961624, at *4. (citation omitted). Accordingly, because Plaintiffs fail to show irreparable harm, the Court denies Plaintiffs' first motion for a preliminary injunction.

II.    Placement

In their second motion, Plaintiffs seek, in part, an order establishing iBRAIN as the students' pendency placement for the 2025–2026 SY. Mem. II at 1. As stated above, the IDEA's stay-put provision entitles children with disabilities to "remain in the[ir] then-current educational placement" at public expense "during the pendency of any proceedings." 20 U.S.C. § 1415(j).

This provision "seeks to maintain the educational status quo while the parties' dispute is being resolved." *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014).  The Second Circuit has characterized the provision as "an automatic preliminary injunction" because it "substitutes an absolute rule in favor of the status quo—that is, the maintenance of a student's then-current educational placement—for the standard preliminary injunction analysis involving irreparable harm, the likelihood of success on the merits, and the balance of hardships." *Mendez*, 65 F.4th at 62 (citation omitted).  Parents "seeking to invoke the stay-put provision of the IDEA need not exhaust their administrative remedies." *Cosgrove v. Bd. of Educ. of Niskayuna Cent. Sch. Dist.*, 175 F. Supp. 2d 375, 384 (N.D.N.Y. 2001).

Two of the students, R.Z. and K.R-O., already have pendency orders in place, *see* Opp. II at 7, so the request for an order establishing pendency placement at iBRAIN is moot with respect to those students.  *See Grullon v. Banks*, No. 23 Civ. 5797, 2023 WL 6929542, at *3 (S.D.N.Y. Oct. 19, 2023) ("This case is moot for the Student-Plaintiffs who received confirmation from the DOE that iBRAIN is their pendency placement."); *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed.").

As for the remaining two students, to determine their "then-current educational placement" for purposes of the stay-put provision, courts look to "(1) the placement described in the child's most recently implemented IEP; (2) the operative placement actually functioning at the time when the stay-put provision of the IDEA was invoked; or (3) the placement at the time of the previously implemented IEP." *Doe v. East Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015) (citation omitted).  Here, the DOE does not dispute that all student Plaintiffs' last agreed-upon placement lies at iBRAIN.  *See* Opp. II at 7; *see also* Opp. II at 2 ("Defendant does not contest that Plaintiffs

have pendency at iBRAIN"); Opp. I at 8–9 (stating that each of the students is attending iBRAIN and is "receiving the requested educational services at public expense and will continue to do so until their administrative proceedings are resolved").  Accordingly, the Court finds that iBRAIN constitutes the students' pendency placement for the 2025–2026 SY.

III.    Funding

Plaintiffs also seek an order directing the DOE to fund the students' pendency placements for SY 2025–2026.  Mot. II at 2; Mem. II at 15 ("Plaintiffs are entitled to a preliminary injunction determining the scope of pendency for the 2025–2026 SY, including associated tuition, transportation and nursing Late Fees.").  Plaintiffs argue that the stay-put provision "compels the DOE to fully fund pendency placement costs for the 2025–2026 SY, in accordance with the respective tuition, transportation and nursing services agreements." Mem. II at 15; *see also id.* at 11 (arguing that "payment and placement go hand-in-hand").  The Second Circuit has held that the "stay-put provision entitles families to automatic relief with respect to educational placement but not with respect to payments." *Mendez*, 65 F.4th at 59 (emphasis added).  The Court, therefore, turns to the traditional preliminary injunction factors to determine whether Plaintiffs are entitled to an order directing the DOE to fund Plaintiffs' pendency placements at this time.  *See id.* at 62–64; *Mondano v. Banks*, No. 24 Civ. 8241, 2025 WL 1984427, at *1–2 (S.D.N.Y. July 17, 2025).

At minimum, Plaintiffs must demonstrate that they are "likely to suffer irreparable injury in the absence of an injunction." *Mendez*, 65 F.4th at 63 (citation omitted).  "Because this dispute is about educational *funding*—not educational *placements*—Plaintiffs are unable to show that their harm is irreparable." *Mendez v. Banks*, No. 22 Civ. 8397, 2022 WL 6807537, at *1 (S.D.N.Y. Oct. 11, 2022), *aff'd* 65 F.4th 56.  Plaintiffs make no showing that schooling or related services are at risk for the 2025–2026 SY, or that the students' continued enrollment at iBRAIN has been

jeopardized by the DOE's alleged nonpayment. *See Mondano*, 2025 WL 1984427, at *2. To the contrary, Plaintiffs only argue that the Court should "compel payment" because "[a]ny significant delays in funding by the Defendants in their financial obligations will cause Plaintiffs to accrue tuition, transportation and nursing late fees." Mem. II at 1. Plaintiffs do not demonstrate that this monetary harm is irreparable, and such an assertion is "too speculative to support a finding of irreparable harm." *Mondano*, 2025 WL 1984427, at *2. Because Plaintiffs fail to show irreparable harm, the Court denies Plaintiffs' motion for a preliminary injunction as to funding payments. *See, e.g.*, *Ogunleye*, 2025 WL 1078301, at *2 (declining to issue preliminary injunction and stating that "[a]bsent a showing that the students are at risk of losing their . . . placements, money damages can provide an adequate remedy in the underlying suit"); *Abrams v. Carranza*, No. 20 Civ. 5085, 2020 WL 4504685, at *1 (S.D.N.Y. Aug. 5, 2020) ("[Although] the parties apparently have certain disputes over payment . . . such a dispute does not implicate irreparable harm, at least where, as here, there is no imminent threat to the educational services themselves.").

Furthermore, absent any showing of harm, Plaintiffs cannot show that it would serve the public interest for the Court to grant their request for emergency relief, or that the balance of hardships tips in their favor. Many of the requests for emergency relief brought by Plaintiffs' law firm have been "borderline frivolous." *Fiallos*, 2025 WL 2961624, at *5. Plaintiffs' second motion for emergency relief in this case, which sought payments to iBRAIN, made "no claim that [any student's] placement at iBrain was at risk." *Id.* "Given that, [Plaintiffs'] request was squarely foreclosed by the Second Circuit's decision in *Mendez*." *Id.* At least a dozen other orders have denied similar motions brought by Plaintiffs' law firm for a failure to demonstrate that any student's placement or receipt of services at iBRAIN is at risk. *See Frias v. Aviles-Ramos*, No. 25 Civ. 5936, 2025 WL 2494336, at *4 (S.D.N.Y. Aug. 29, 2025) (collecting cases). In fact, Plaintiffs

8

were specifically warned by another judge in this district that they would need to show that the students' "placement or receipt of services [at iBRAIN] is at risk," *id.* (citing *Mendez*, 65 F.4th at 63–64)—but they have made no such showing.  Thus, "[t]o grant Plaintiff relief given this track record would incentivize more meritless . . . motions." *Fiallos*, 2025 WL 2961624, at *5.  These motions tax the resources of the federal courts and the DOE, "which in turn affords the DOE less time to appropriately investigate the issues raised in the DPCs," Opp. II at 10, and impedes the DOE's ability to fairly attend to the "thousands of funding requests [received] under the IDEA at the start of each school year," *Mendez*, 65 F.4th at 63.

### CONCLUSION

For the reasons stated above, Plaintiffs' first motion for a preliminary injunction, ECF No. 6, is DENIED.  Plaintiffs' second motion for a preliminary injunction, ECF No. 13, is GRANTED IN PART and DENIED IN PART.  Specifically, the Court declares that the students are entitled to pendency placement in iBRAIN for the 2025–2026 SY and DENIES the motion in all other respects.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 6 and 13.

SO ORDERED.

Dated: December 1, 2025
       New York, New York

_____
ANALISA TORRES
United States District Judge